IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Melvin Weitzman, | ) | Case No. 05 B 05747 |
| | ) | |
| Debtor. | ) | Hon. Susan Pierson Sonderby |

MEMORANDUM OPINION

This matter is before the court on the Motion of Elgin Riverboat Casino to Reopen Case and to Retroactively Allow State Court Proceeding Against Trustee Thomas Vaughn (the "Motion"). For the reasons stated, the Motion is granted in part and denied in part.

**Background**

The parties are in agreement as to the facts. In addition, where necessary to provide background, the court has taken judicial notice of certain dates on this bankruptcy case's docket and the contents of documents filed in this case. Fed. R. Evid. 201; In re Woodmar Realty Co., 294 F.2d 785, 788 (7th Cir. 1961). On May 23, 2000, the Circuit Court for the 16th Judicial Circuit, Kane County, Illinois (the "State Court") entered a judgment in favor Elgin Riverboat Casino d/b/a Grand Victoria Casino (the "Casino") and against Melvin Weitzman (the "Debtor") in the amount of $31,538.73 (the "Judgment").

On February 21, 2005 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code (the "Bankruptcy Code"). A proposed chapter 13 plan was filed on March 1, 2005, and later amended on August 19, 2005 (the "Amended Plan"). The Casino filed proof of claim no. 3 in the chapter 13 case asserting an unsecured nonpriority claim in the amount of $28,282.73 based on the Judgment.

During the pendency of the chapter 13 case, the Debtor paid $81,000 to the standing chapter

13 trustee, Tom Vaughn (the "Trustee")[1] in accordance with 11 U.S.C. § 1326(a)(1) which requires debtors to commence making proposed plan payments to the chapter 13 trustee no later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier. Some of those funds were disbursed by the Trustee to the Debtor's ex-wife pursuant to an order of the court entered on February 24, 2006.

The court entered an order denying confirmation of the Amended Plan on February 3, 2006. The Trustee then brought a motion to dismiss the case for denial of confirmation pursuant to 11 U.S.C. § 1307(c)(5). The dismissal motion was scheduled for hearing on February 23, 2006 at 9:30 a.m. Shortly before the hearing on the dismissal motion, the Trustee's counsel advised the Casino's counsel by telephone that the case was going to be dismissed and that the Trustee was holding $52,636.37 of the payments the Debtor made toward the proposed Amended Plan (the "Debtor's Funds"). The court granted the dismissal motion on February 23, 2006, but the order of dismissal was not entered on the case docket until the following day. The case remained open and the Trustee continued to serve after dismissal until June 2, 2006.[2]

In the early afternoon of February 23, 2006, the Casino, in an effort to collect on its Judgment, caused the issuance of a Third-Party Citation to Discover Assets from the State Court

---

[1] Tom Vaughn is one of four individuals appointed by the United States trustee to serve as a standing trustee in chapter 13 cases in this district, see 28 U.S.C. § 586(b) and 28 C.F.R. § 58.2, and thus is authorized to serve as trustee in this case. 11 U.S.C. § 1302(a). Chapter 13 standing trustees are charged with many duties and responsibilities in administering the estate. See, e.g., 11 U.S.C. § 1302(b), (c) and (d).

[2] Dismissal is not immediately followed by closing of the case. Rather, the estate has to be fully administered and the trustee discharged before the case is closed. 11 U.S.C. § 350(a); Fed. R. Bank. P. 5009. Full administration of a chapter 13 case includes the chapter 13 trustee making a final report and filing a final account of administration with the court and the United States trustee. 11 U.S.C. § 1302(b)(1).

2

directed to "Tom Vaughn, Chapter 13 Trustee" (the "Citation"). The issuance of the Citation commenced a supplementary proceeding before the State Court. *See* 735 ILCS § 5/2-1402(a); ILL. S. CT. R. 277. The Citation commanded the Trustee to (i) appear before the State Court on March 22, 2006, to be examined under oath to discover assets or income of the Debtor not exempt from the enforcement of the Judgment, and (ii) produce the Debtor's Funds and records containing information concerning the Debtor's nonexempt property. In the meantime, the Citation prohibited the Trustee from making or allowing any transfer of nonexempt property belonging to the Debtor. The Citation further warned that the failure to appear at the examination may result in arrest, contempt proceedings, and possible imprisonment.

The Casino did not provide this court with a copy of a proof of service of the Citation and did not divulge in its Motion or supporting papers when, how, and on whom the Citation was served. At a hearing on the Motion, the Casino acknowledged that the Citation was not left with the Trustee personally, but was given to someone at the Trustee's office. Information as to the identity of that person, whether he or she was the Trustee's employee, and if so, his or her job responsibilities were not provided to this court.

On March 21, 2006, the day before the return date on the Citation, the Trustee filed an "Emergency Motion to Remove State Court Causes Pursuant to 29 U.S.C. 1452 and Federal Rule of Bankruptcy Procedure 9027 and Vacate Dismissal Pursuant to Federal Rule of Civil Procedure 60(b)." The Trustee asked in the motion that the supplementary proceedings commenced by the Casino and two other creditors be removed to this court. This court entered an order denying that motion on April 11, 2006, based, at least in part, on the representation of the Trustee's counsel that the Trustee was not holding any of the Debtor's Funds because they were disbursed by the Trustee

3

to the Debtor within 24 hours after dismissal of the bankruptcy case. The Trustee's counsel advised that the fact the Trustee was not holding the Debtor's Funds would be reported to the State Court judges presiding over the supplementary proceedings.

Approximately two months later, on June 1, 2006, the Trustee filed his Final Report and Account in this case. The Final Report reflects the Trustee's disbursement of the Debtor's Funds to the Debtor, but does not indicate the date of that disbursement. As noted, the Trustee's counsel previously informed the court that the disbursement was made within a day of the dismissal of the case. The parties have only agreed for this motion, however, that the Trustee's disbursement to the Debtor took place sometime between the dismissal of this chapter 13 case on February 23, 2006, and the March 22, 2006 return date on the Citation. Both of those dates are prior to the closing of the chapter 13 case and discharge of the Trustee on June 2, 2006. Because of the absence of information as to the particulars of the service of the Citation this court does not know whether the disbursement of the Debtor's Funds occurred before or after service of the Citation, assuming there was service.

On January 11, 2007, about six months after the closing of the chapter 13 case, the Casino filed a pleading entitled Third-Party Complaint against the Trustee with the State Court (the "Complaint"). In Count I of the Complaint, the Casino seeks to hold the Trustee personally liable for the amount of its Judgment against the Debtor based on 735 ILCS § 5/2-1402(f). That statute allows the State Court to enter judgment against a third-party citee who violates a citation's prohibition against transferring nonexempt moneys due the judgment debtor. In this matter, the Casino contends that the Trustee violated the Citation's prohibition when he transferred the Debtor's Funds, and, should therefore have a judgment entered against him and in favor of the Casino in the amount of the Judgment against the Debtor. In Count II, the Casino asks the State Court to issue a

4

Rule to Show Cause against the Trustee why he should not be held in contempt for violating the Citation's prohibition. The Casino alleges that "[t]he contempt lies in the Trustee's willful failure to respond to, or otherwise comply with, the Citation in any manner whatsoever, and in his failure to hold the funds pending a resolution by this Court or the State Court." (Reply of Elgin Riverboat Casino in Support of Motion to Retroactively Allow State Court Proceedings Against Trustee Thomas Vaughn, p. 3).

On February 8, 2007, the Trustee filed a motion to dismiss the Complaint with the State Court based on the Barton doctrine which requires plaintiffs to obtain the permission of the appointing court to bring a lawsuit against the trustee. The Casino did not respond to that motion, but informed the State Court of its intention to obtain permission from this court to proceed with the Complaint against the Trustee.

Approximately four months later, on June 20, 2007, the Casino filed this Motion to Reopen Case and to Retroactively Allow State Court Proceedings Against Trustee Vaughn. In the Motion, the Casino seeks permission to continue with the Complaint. To explain its failure to seek permission from this court prior to filing the Complaint in the State Court, the Casino offers that at the time it filed the Complaint it did not "believe the Barton doctrine applied . . . because the bankruptcy case had been dismissed and the [T]rustee was holding the [D]ebtor's money simply as any other stake holder receiving a third party citation regarding a judgment debtor." (Motion, ¶ 10). As will be discussed, the belief as to the inapplicability of the Barton doctrine was misplaced and the Trustee was not holding the Debtor's Funds like "any other stake holder."

**Discussion**

**A.    Jurisdiction**

Federal courts have a duty to police their own jurisdiction over matters brought before them. Smoot v. Mazda Motors of America, Inc., 469 F.3d 675, 678 (7th Cir. 2006). This matter involves a motion under section 350(b) of the Bankruptcy Code to reopen a closed chapter 13 case so the court can consider a creditor's request for permission to continue a lawsuit against the chapter 13 trustee for an action he took during his administration of the Debtor's estate.

Under Section 350(b) of the Bankruptcy Code, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The court has jurisdiction to decide a motion to reopen. In re Redmond, 380 B.R. 179, 182 (Bankr. N.D. Ill. 2007).

Reopening a case is not mandatory. In re Bianucci, 4 F.3d 526, 528 (7th Cir. 1993); In re Shondel, 950 F.2d 1301, 1304 (7th Cir. 1991) (citing Hawkins v. Landmark Fin. Co., 727 F.2d 324, 326 (4th Cir. 1984) and In re Thomas, 204 F.2d 788, 791 (7th Cir. 1953)). Indeed, the decision to reopen a case for "other cause" lies within the discretion of the bankruptcy court. Shondel, 950 F.2d at 1304.

Here, the Casino asserts that the cause to reopen this case is the need for this court to entertain the Casino's request for permission to continue the Complaint against the Trustee pursuant to the Barton doctrine. The Barton doctrine takes its name from an 1881 Supreme Court decision, which held that "an equity receiver could not be sued without leave of the court that appointed him." In re Linton, 136 F.3d 544, 545 (7th Cir. 1998) (citing Barton v. Barbour, 104 U.S. 126, 128-29, 26 L.Ed. 672 (1881)). In Linton, the Seventh Circuit concluded that the Barton permission requirement

6

applies to a bankruptcy trustee because "[j]ust like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code." Id.; see also Mickler v. Davis, 2005 WL 2179772, *2 (M.D. Fla. Sept. 9, 2005)(rejecting argument that Barton did not apply because the chapter 13 trustee was not appointed by the bankruptcy court).

The Seventh Circuit observed that allowing a creditor to sue a bankruptcy trustee without leave of court would require the trustee to divert his attention from administrating the bankruptcy estate to defending himself from possibly unwarranted lawsuits. Linton, 136 F.3d at 545; see also In re marchFIRST, Inc., 378 B.R. 563(Bankr. N.D. Ill. 2007). The Court was concerned that serving as a trustee would become a "more irksome duty" if he had to work under the threat of unfettered suits against him by creditors or other parties in interest in the bankruptcy case. Linton, 136 F.3d at 545. Morever, without the shield of Barton, "[t]rustees will have to pay higher malpractice premiums and this will make the administration of the bankruptcy laws more expensive (and the expense of bankruptcy is already a source of considerable concern)." Id. An adverse consequence of such a situation is the likely thinning of the pool of competent individuals willing to serve as trustees. Id.

In the Linton case, the chapter 7 trustee filed an adversary complaint against the debtor, her sons and husband to avoid and recover fraudulent conveyances. The trustee later voluntarily dropped the lawsuit. After the bankruptcy case was closed, the former debtor and her husband filed a lawsuit against the trustee in state court for damages resulting from the trustee's alleged malicious prosecution of the fraudulent conveyance suit. They then brought a motion before the bankruptcy court for leave to file the "dormant" lawsuit. Id. at 545.

7

The Court noted that the usual reasons for requiring prior permission to sue the trustee may not apply after the bankruptcy case is wound-up and closed. Id. at 546. Intuitively, after the case is closed, a suit against a trustee will not divert him from his administrative responsibilities. The Court concluded, however, that although the potential for diversion was not implicated after the closing of the case, a different concern based on the integrity of bankruptcy jurisdiction merited extending the Barton protection post-closing. The Court reasoned in this regard that, "[i]f debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, that court would have the practical power to turn bankruptcy losers into bankruptcy winners, and vice versa." Id. The Court further observed that the "principles of res judicata and the good faith of state courts would head off the worst consequences of the kind of divided jurisdiction over bankruptcy matters. . . . But a simpler and more secure protection is to require the person wanting to bring a suit in state court against a trustee in bankruptcy to obtain leave to do so from the bankruptcy court." Id.

This court concludes that it has jurisdiction over the request to reopen and the request for permission to allow the Complaint to go forward. The court further concludes that there is cause to reopen this case so the Trustee can invoke the Barton doctrine which is "intended for his protection and for the protection of the integrity of the bankruptcy system." *See* Id. The court will therefore exercise its discretion and reopen this case.

**B.      Analysis of the Request for Permission to Sue the Trustee**

Generally, the court should not give its permission unless it is convinced that the movant has a *prima facie* case against the trustee. In re Berry Pub. Services, Inc., 231 B.R. 676, 679 (Bankr. N.D. Ill. 1999). Notably, when one element of the *prima facie* case for malicious prosecution in the

8

Linton case was not shown to the satisfaction of the bankruptcy judge, the lawsuit was said to be "doomed" and therefore the bankruptcy judge rightfully refused to permit the lawsuit against the trustee to go forward. Linton, 136 F.3d at 547.

Here, the Casino asserts two related claims against the Trustee in the Complaint it wishes to pursue. It seeks the entry of a judgment against the Trustee for violating the Citation's prohibition against transferring the Debtor's Funds and it asks for sanctions based on his alleged contempt of that prohibition. The parties have not enumerated the elements of the *prima facie* cases for such claims. The Illinois Supreme Court describes a *prima facie* case as "one which is apparently established by evidence adduced by the plaintiff in support of his case up to the time such evidence stands unexplained and uncontradicted." Morrison v. Flowers, 308 Ill. 189, 195, 139 N.E. 10, 12 (1923). In other words, a case that "will support a judgment unless other evidence is introduced." Detig v. Kelley, 17 Ill.App.2d 496, 150 N.E.2d 845 (App. Ct. 1958). This court must therefore determine whether the evidence provided to this court by the Casino would support its claims without requiring further explanation from the Casino, but prior to considering contradictory evidence from the Trustee.

The Casino's claims against the Trustee are based on an Illinois statute and related court rule concerning supplementary proceedings. Under Illinois law, judgment creditors are entitled to serve citations on third-parties for the purpose of discovering nonexempt assets of the judgment debtor in the possession of the third-party that may be used to satisfy the judgment. 735 ILCS § 5/2-1402(a). When nonexempt assets are discovered, "the court *may*, by appropriate order or judgment" compel a third-party citee to "deliver up any assets so discovered." Id. at § 5/2-1402(c)(3) (emphasis added). In the meantime, the citation *may* prohibit a third-party from transferring or otherwise disposing of

the debtor's non-exempt assets up to twice the judgment amount until a court can determine who is entitled to the funds. Id. at § 5/2-1402(f)(1) (emphasis added). If the third-party citee violates that prohibition, the court may enter judgment against him in the amount of the unpaid portion of the judgment and allowable costs. Id. Moreover, any person who fails to obey a citation may be punished for contempt. Id.; ILL. S. CT. R. 277(h).

The prohibition is in place to account for and preserve the judgment debtor's assets until the court decides whether those assets should be used to pay down the judgment. City of Chicago v. Air Auto Leasing Co., 297 Ill.App.3d 873, 880, 697 N.E.2d 788, 792, 232 Ill.Dec. 46 (App. Ct. 1998). The prohibition in a third-party citation is not an injunction, but merely serves to warn the third-party citee of possible sanctions he may incur if he transfers the judgment debtor's non-exempt assets prior to the citation court ruling on whether those assets should be applied to the judgment. Bank of Aspen v. Fox Cartage, Inc., 126 Ill.2d 307, 314, 533 N.E.2d 1080, 1083, 127 Ill.Dec. 952 (1989); *see also* Cacock v. Covington, 111 F.3d 52, 54 (7th Cir. 1997). In Bank of Aspen, the Illinois Supreme Court observed that given the language of section 2-1402, if a "third-party respondent deliberately puts the property beyond the reach and in violation of the citation without color of legitimate claim, contempt may be the appropriate punishment." Id. at 1086. The purpose of the contempt sanction is to punish, not to compel compliance. Id. If contempt is not shown, the relief against the third-party citee who has violated the prohibition against transfer is limited to the judgment remedy. Id.

In deciding whether to enter judgment against or hold a third-party citee in contempt, the court as a threshold matter, should determine whether the commencement of the supplementary proceeding via the issuance of the citation was proper. In this regard, Illinois Supreme Court Rule

277 provides that a supplementary proceeding may be commenced at any time "with respect to a judgment which is subject to enforcement." Bank of Matteson v. Brown, 283 Ill.App.3d 599, 669 N.E.2d 1351, 1352, 218 Ill.Dec. 825 (App. Ct. 1996)(quoting ILL. S. Ct. R. 277). Supplementary proceedings are therefore "unavailable to creditors until after a judgment capable of enforcement has first been entered in their favor." Id. (citing State Bank v. A Way, Inc., 135 Ill.App.3d 1010, 482 N.E.2d 620, 90 Ill.Dec. 641 (App. Ct. 1985)). Logically, if the judgment is incapable of enforcement, the judgment creditor should not cause the issuance of a citation. Moreover, a claim premised on violation of a citation issued in furtherance of an unenforceable judgment should not stand.

If the court is convinced that the citation is based on an enforceable judgment, before entering judgment against the third-party citee or finding him in contempt, it should also determine whether the third-party citee was on clear notice of the citation's prohibition against transfers. Id. In order to be on clear notice, the third-party citee must have been properly served with a citation that includes the prohibition. See Air Auto Leasing, 697 N.E.2d at 791. Citations must be served and returned in the manner provided by rule for service of summons. ILL. S.Ct. R. 277(c). Proper service of a summons on an individual defendant is accomplished when the summons is left with the defendant personally or a copy is left at his usual place of abode with a member of his family or a person who resides there and is thirteen years or older, as long as that person is informed of the contents of the summons and a copy is mailed to the defendant. 735 ILCS 5/2-203(a). Illinois law further provides that an individual receiver appointed for either an individual or a corporation may be served summons like any other individual or by leaving a copy of the summons with any agent in his employ. 735 ILCS 5/2-212.

11

After being satisfied as to proper service of a citation based on a final and enforceable judgment, the court then decides whether the citation's prohibition against transfer was violated. *See* Air Auto Leasing, 697 N.E.2d at 790. If contempt sanctions are being sought for the violation, the court also decides whether the violation was contemptuous.

To sum up therefore, it can be said that a *prima facie* case to enter the judgment remedy against a third-party citee includes, at least: a citation issued in furtherance of an enforceable judgment, proper service of the citation on the third-party citee, and a transfer that violated the prohibition. If asking for contempt sanctions, the *prima facie* case includes the same elements plus a contemptuous transfer.

In this matter, the Casino has problems with all of the elements and has failed to persuade this court to give the Casino permission to continue its prosecution of the Complaint against the Trustee. First, the evidence adduced by the Casino does not demonstrate that the citation was issued when the Casino's judgment was enforceable. With certain exceptions not raised by the parties here, the filing of a bankruptcy petition operates as an automatic stay. 11 U.S.C. § 362(a). The stay prevents, among other actions, the enforcement of a prepetition judgment against the debtor or property of the estate. 11 U.S.C. § 362(a)(2). In other words, when the automatic stay is in effect, prepetition judgments are incapable of enforcement. *See* In re Fridge, 239 B.R. 182, 188 (Bankr. N.D. Ill. 1999)("While Illinois law provides for commencement of a citation supplementary proceeding, once a judgment debtor files in bankruptcy, the bankruptcy automatic stay goes into effect and proscribes certain actions by a judgment creditor against the debtor."). The prepetition judgment subject to the stay cannot, therefore, validly support the commencement of a supplemental proceeding.

The Casino is essentially arguing that when the Citation was issued on February 23, 2006, the chapter 13 case had been dismissed so the automatic stay was no longer in effect to prevent the enforcement of the Judgment. The Casino does not recognize, however, that dismissal of this case was not effective until the order of dismissal was entered on the docket on February 24, 2006. *See* In re Garland, 295 B.R. 347, 352 (9th Cir. BAP 2003); Fed. R. Bank. P. 9021 (incorporating Fed. R. Civ. P. 58 and 79(a)) and Fed. R. Bank. P. 5003(a); *see also* C.I.T. Financial Service v. Yeomans, 710 F.2d 416, 417 (7th Cir. 1983)(stating judgment must be entered on the docket before becoming final).[3] The Citation was issued when the stay was still in effect and the Judgment was unenforceable. Therefore, the Casino has not satisfactorily shown the first element of the *prima facie* case for the claims it wants to assert against the Trustee.

There is also an issue as to the proper service of the Citation on the Trustee, and thus whether the Trustee was on clear notice of the prohibition against transfer. The Casino acknowledged that the Trustee was not personally served with the Citation. As noted, the only "evidence" adduced by the Casino as to service of the Citation was a statement of its counsel that the Citation was served on someone in the Trustee's office. Assuming service on an agent of the Trustee is proper pursuant to 735 ILCS § 5/2-212, the Casino has not established whether that someone in the office was an employee of the Trustee and whether he or she qualifies as an agent for service. *See* United Bank

---

[3] C.I.T Financial Service states "[t]wo requirements must be met before an adjudication becomes an effective judgment: (1) the judgment must be set forth in writing on a separate document . . . and (2) the judgment so set forth must be entered in the civil docket as provided by [Fed.R.Civ. P.] 79(a)." 710 F.2d at 417 (internal quotes omitted); *see also* In re Schraiber, 141 B.R. 1008, 1014 (Bankr. N.D. Ill. 1992)(recognizing that "separate document rule" requirement that judgments be docketed before they are effective applies to any appealable order); *but see* Standard Federal Bank for Savings v. Hanno, 323 Ill.App.3d 521, 524, 752 N.E.2d 601, 603, 256 Ill.Dec. 721 (App. Ct. 2001) and In re Sanders, 240 B.R. 636, 644 (S.D. Fla. 1999)(both cases holding dismissal orders were effective when signed or announced in court prior to entry on docket).

13

of Loves Park v. Dohm, 115 Ill.App.3d 286, 292, 450 N.E.2d 974, 978, 71 Ill.Dec. 286 (App. Ct. 1983) (a bank employee was found to be an agent because she had been trained to accept service; accepting service was a normal duty, and she understood the purport of the summons); Megan v. L. B. Foster Co., 1 Ill.App.3d 1036, 1038, 275 N.E.2d 426, 427 (App. Ct. 1971) (service is sufficient upon an employee who is shown to understand the meaning of service).

The Casino's evidence also does not support its claim that the Trustee's disbursement of the Debtor's Funds violated the prohibition as a factual matter. First, there is nothing to show this court that the Citation was served prior to the disbursement of the Debtor's Funds. Indeed, the Casino concedes that "had the [T]rustee returned the funds prior to service of the [C]itation, [the Casino] would have no claim against the [T]rustee." (Motion, ¶ 14).

Finally, there is another perhaps more compelling legal reason why the Casino cannot show that the Trustee's transfer of the Debtor's Funds violated the Citation's prohibition. To explain, when this case was dismissed prior to a plan being confirmed, the Trustee was required by the plain language of section 1326(a)(2) of the Bankruptcy Code to return plan payments to the Debtor after deducting only administrative expenses. 11 U.S.C. § 1326(a)(2). Section 1326(a)(2) is mandatory. In re Clifford, 182 B.R. 229, 231 (Bankr. N.D. Ill. 1995). Moreover, because it is a federal statute, section 1326(a)(2) preempts contradictory or inconsistent provisions of Illinois law, including statutes and rules concerning supplementary proceedings. See Wehmeier v. UNR Industries, Inc., 213 Ill.App. 3d 1095, 1096, 574 N.E.2d 1, 2, 158 Ill. Dec. 207 (App. Ct. 1990)(recognizing that the Bankruptcy Code and the bankruptcy court's plan confirmation order controlled over contradictory Illinois statutes, laws, and rules concerning supplemental proceedings); General Iron Industries, Inc. v. A. Finkl and Sons Co., 292 Ill.App.3d 439, 444, 686 N.E.2d 1, 5, 226 Ill. Dec. 652 (App. Ct.

1997)(". . . it is well established that sole jurisdiction in bankruptcy is lodged in the national government and that power is paramount and supersedes all inconsistent state laws.").

The <u>Wehmeier</u> court noted that "under the constitutional power given Congress to enact laws on bankruptcy, legislation on that subject is supreme, and a major purpose of those laws is to provide a distribution of the bankrupt's estate that is as fair as possible to all creditors." Wehmeier, 574 N.E.2d at 3. The bankruptcy purpose implicated in this matter is that when an unconfirmed chapter 13 case is dismissed, the debtor and competing creditors are placed in the same positions they were in prior to the filing of the case. *See* <u>In re Slaughter</u>, 141 B.R. 661, 663 (Bankr. N.D. Ill. 1992)(citing to 11 U.S.C. § 349 and concluding that "[d]ismissal of a Chapter 13 case has the effect of restoring, as nearly as possible, the various parties to their pre-bankruptcy positions."). The creditors will thus have their respective remedies they had just prior to the beginning of the chapter 13 case and the debtor will not be penalized for seeking, albeit unsuccessfully, to pay his creditors through a plan. *See* <u>In re Davis</u>, 2004 WL 3310531, *2 (Bankr. M.D. Ala. Jun. 16, 2004). The chapter 13 trustee's return of the funds to the debtor less allowed costs of administration is consistent with the effect of dismissal of a chapter 13 case prior to plan confirmation. <u>In re Walter</u>, 199 B.R. 390, 393 (Bankr. C.D. Ill. 1996); <u>In re Inyamah</u>, 378 B.R. 183, 185 (Bankr. S.D. Ohio 2007).

Because of the supremacy of the Section 1326(a) mandate to return the Debtor's Funds to the Debtor over the state law requiring the Trustee to hold onto those funds, the Citation's prohibition defers to the mandate. In other words, the prohibition is suspended. *See* General Iron, 686 N.E.2d at 5. Logically, one cannot violate a suspended prohibition. Therefore, the Casino

cannot show a transfer that violated the Citation's prohibition.[4]

**Conclusion**

The court concludes that the Casino has not satisfied the court that it has a *prima facie* case. Therefore, the Casino's request for permission to allow the Complaint against the Trustee is denied. The Court will enter an order reopening the case and denying permission to the Casino to retroactively allow state court proceedings against the Trustee Thomas Vaughn. The court will hold a status hearing on this case for the Casino to report about the disposition of the Complaint in the State Court.[5] Given the result, the court need not rule on the laches or immunity arguments. *See* Berry Publishing, 231 B.R. at 676. The court also need not address the appropriateness of seeking retroactive permission.

Dated:

ENTER:

Susan Pierson Sonderby
United States Bankruptcy Judge

---

[4] In the Clifford case, Judge Squires concluded that a notice of tax levy pursuant to Illinois statute served on the chapter 13 trustee fixed a lien on the debtor's funds in the trustee's possession. 182 B.R. at 231. That lien remained on the funds when the trustee transferred them to the debtor in accordance with section 1326(a)(2). Therefore, there was no need to determine if section 1326(a)(2) preempted the lien provisions of the Illinois statute. Here, the court is not being asked to decide whether the Casino obtained a valid lien on the Debtor's Funds when they were in the possession of the Trustee. Rather, the court is being asked whether the Casino can continue prosecuting claims that would hold the Trustee personally liable to the Casino for the amount of the Judgment and/or other sanctions on the grounds that he violated the Citation's prohibition. In this scenario, the statutes - a federal statute mandating a distribution of funds to the debtor in furtherance of a bankruptcy principle and a state statute prohibiting the transfer of the same funds to aid one judgment creditor's quest for satisfaction - cannot be harmonized.

[5] The Seventh Circuit in Linton noted that a possible remedy of a trustee in this type of situation is to seek an injunction directing the plaintiff to dismiss the suit. 136 F.3d at 546. The Court noted that the availability of such a remedy is an interesting question and "[t]he Anti-Injunction Act, containing as it does an exception for injunctions necessary to 'protect or effectuate [the issuing court's] judgments,' 28 U.S.C. § 2283, would presumably not stand in the way." Id.